1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cosmetic Alchemy, LLC an Arizona limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>R&G, LLC, a limited liability company; Reginaldo Torres, an individual; and Gabriela Dabdoub, an individual,<br><br>    Defendants.<br>_____<br><br>R&G, LLC, a limited liability company; Reginaldo Torres, an individual; and Gabriela Dabdoub, an individual,<br><br>    Counterclaimants,<br><br>vs.<br><br>Cosmetic Alchemy, LLC an Arizona limited liability company; Scott Wasserman and Hope Wasserman, a married couple; Kimber-Leigh Oppman, an individual; Mario Rios, an individual; Eva Baez Garcia, an individual; Beautiful Easy, LLC, an Arizona limited liability company; Jane and John Does I-X; and Black and White Companies I-X,<br><br>    Counterdefendants.<br>_____ | No. CV-10-1222-PHX-GMS<br><br>**ORDER** |

Pending before this Court are a Motion to Strike (Doc. 24) and Motion to Dismiss (Doc. 25) filed by Plaintiff/Counterdefendant Cosmetic Alchemy, LLC, and

1  Counterdefendants Scott Wasserman, Hope Wasserman, Kimber-Leigh Oppman, Mario Rios,
2  Eva Baez Garcia, and Beautiful Easy, LLC. For the reasons stated below, the Court grants
3  the Motion to Strike (Doc. 24) and grants in part and denies in part the Motion to Dismiss
4  (Doc. 25).

## BACKGROUND

Counterclaimants allege the following. (Doc. 9). In 2007, Kimber-Leigh Oppman of Cosmetic Alchemy approached Gabriela Dabdoub about working with the company as an independent contractor to launch Li'Lash™ cosmetic products in the Latin market. Several months later, Ms. Dabdoub and Mr. Reginaldo Torres formed R & G, LLC and became the exclusive distributors of Li'Lash in Mexico. After Cosmetic Alchemy terminated its contract with R & G, R & G decided to launch its own eyelash-enhancing products. C Coast Labs, which also produced Cosmetic Alchemy's products, manufactured the product, which Counterclaimants allege is different from the compound purchased by Cosmetic Alchemy. R & G sells its product, DABALASH, in Mexico, Argentina and other Latin American countries.

Around April 2008, Mario Rios began doing some web services work for R & G. Mr. Rios had set up a website for Cosmetic Alchemy's Li'Lash product. R & G hired him to perform web design work related to its DABALASH product, including designing and maintaining a website and establishing e-mail accounts. The dabalash.com domain name was registered by Mr. Rios on behalf of R & G in April 2009. R & G promoted its product through the website, and eventually sales of DABALASH approached $40,000 per month. The company promoted the product and dabalash.com website in magazines and other media.

According to Counterclaimants, R & G informed Mr. Rios in March and April 2010 that the company intended to hire a new firm to do its web-related work. Following those discussions, and without R & G's consent, Mr. Rios transferred the dabalash.com domain name to Dr. Wasserman of Cosmetic Alchemy. Mr. Rios and Cosmetic Alchemy removed the dabalash.com website and blocked R & G's access to relevant email accounts. Defendants/Counterclaimants raise a number of claims related to this transfer of the domain

name and company information.

## DISCUSSION

**A.  Motion to Strike**

Counterdefendants move to strike from the counterclaim references to an alleged extramarital relationship involving two of the Counterdefendants and the immigration status of Counterdefendant Rios. (Doc. 24). Pursuant to Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Skydive Ariz., Inc. v. Quattrochi*, 2006 WL 2460595, at *3 (D. Ariz. Aug. 22, 2006) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). "'Impertinent matter consists of statements that do not pertain, and are not necessary to the issues in question.'" *Id.* (internal quotations omitted). "Scandalous material is that which 'cast[s] an excessively adverse light on the character of an individual or a party.'" *Reichert v. Nat'l Credit Sys., Inc.*, 2005 WL 55549677, at *4 (D. Ariz. March 31, 2005) (quoting *OKC Corp. v. Williams*, 461 F.Supp. 540, 550 (N.D. Tex. 1978), *cert. denied*, 449 U.S. 952 (1980)).

The "function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Osei v. Countrywide Home Loans*, 692 F.Supp.2d 1240, 1247 (E.D. Cal. 2010) (citing 5A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1380 (2d ed. 1990)).

Defendants/Counterclaimants allege that Mr. Rios is an "illegal alien," and in their response to the motion to strike contend that such allegation is "directly relevant to the counterclaims." (Doc. 9, 26). They raise the following counterclaims: (1) intentional interference with business expectancy; (2) intentional interference with contractual relations;

1 (3) unfair competition; (4) misappropriation of trade secrets; (5) false advertising; (6) trespass to chattels; (7) conversion; (8) cybersquatting; (9) defamation; and (10) breach of contract. (Doc. 9). Mr. Rios' immigration status is both immaterial and impertinent to any of these counterclaims. It appears that Counterclaimants are attempting to use their counterclaim to challenge Cosmetic Alchemy's promissory fraud claim. Although their response clearly states that Mr. Rios' immigration status is directly relevant to their counterclaims, the substance of the response addresses Cosmetic Alchemy's claim that Mr. Rios justifiably relied on Defendants' promise to Rios that if he would close his own business and work exclusively for Defendants, Defendants would provide him with his own eyelash product to sell. (Doc. 1). Counterclaimants have not provided any specific argument connecting Mr. Rios' immigration status to their counterclaims. Moreover, the allegation that Mr. Rios is an "illegal alien" is highly prejudicial and not relevant to this case. Striking this allegation in no way prevents Counterclaimants from presenting evidence of Mr. Rios' employment outside R & G during the period of time at issue. Accordingly, the Court grants Counterdefendants' motion to strike the allegation.

With regard to the references of a romantic relationship between Dr. Wasserman and Ms. Oppman, Counterclaimants contend that proof of such relationship "is relevant to show [the Counterdefendants] were acting together in their tortious actions." (Doc. 26). They rely on a case, in which a district court denied a motion to strike language from an indictment that referenced a romantic relationship between two of the defendants who were charged with aiding and abetting one another in the commission of a wire fraud scheme. *U.S. v. Adams*, 2010 WL 1751967, at *1 (W.D. Okla. Apr. 30, 2010). Counterclaimants do not raise a conspiracy claim, but rather argue that "Dr. Wasserman and Ms. Oppman, among others, acted knowingly and *directly*" in committing the alleged torts. (Doc. 26) (emphasis added). Thus, the Court is not persuaded that the alleged romantic relationship "bears [any] possible relation to the controversy" at issue, and certainly such allegations will cause some prejudice to Counterdefendants. *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)). Should the joint

1 action of Dr. Wasserman and Ms. Oppman ever prove relevant, their relationship may be
2 offered. Until such time, however, the allegations serve no apparent purpose. Accordingly,
3 the Court grants the motion to strike as to these references.

**B.    Motion to Dismiss**

   **1.    Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

   **2.    Analysis**

      **Count 1: Intentional Interference with Business Expectancy**

Counterdefendants contend that this claim should be dismissed because it is preempted by Arizona's Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-407 (2010). (Doc. 25). They argue specifically that the claim is based on the alleged misappropriation of trade secrets, and AUTSA "displaces conflicting tort, restitutionary and other laws of

- 5 -

[Arizona] providing civil remedies for misappropriation of a trade secret." § 44-407(A). However, the counterclaim also alleges Counterdefendants' intentional interference through the act of "contact[ing] R & G's customers and distributors and inform[ing] them that DABALASH did not contain the allegedly necessary active ingredient [thereby] induc[ing] many customers not to do business with R & G." (Doc. 9). AUTSA does not affect "[o]ther civil remedies that are not based on misappropriation of a trade secret." § 44-407(B). Accordingly, to the extent that the counterclaim alleges that the intentional interference of business expectancy is based on acts, other than the misappropriation of trade secrets, that "induc[ed] or otherwise caus[ed] a third person not to enter into or continue" a business relationship with R & G, Counterdefendants' motion to dismiss is denied. RESTATEMENT (SECOND) OF TORTS § 766B (1979).

**Count 2: Intentional Interference with Contractual Relations**

Counterclaimants allege that R & G had a contract with GoDaddy.com, Inc. for registration and hosting of the dabalash.com domain name, and that Counterdefendants "intentionally induced a breach of that contract by arranging for the transfer of the dabalash.com domain name to the control of Dr. Wasserman." (Doc. 9). In the response to this Motion to Dismiss, they reiterate that "R & G was denied its ability to perform under the contract. In other words, R & G could no longer pay GoDaddy.com for its website and could no longer renew its ownership of the website when the time would come for renewal." (Doc. 27).

To state a claim for intentional interference with contractual relations, a plaintiff must allege: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly. *Snow v. W. Sav. & Loan Ass'n*, 152 Ariz. 27, 33, 730 P.2d 204, 211 (1986). Counterdefendants assert that the counterclaim fails to allege any facts to support element three of the claim, specifically that they interfered with the contractual relationship, resulting in a breach of the contract.

1         Counterclaimants appear to simply argue that transferring the domain name to Dr.
2 Wasserman now prevents them from paying GoDaddy.com for hosting the website or
3 renewing the contract. Even if true, it is not apparent that these facts necessarily result in a
4 breach of contract for which R & G would be entitled to relief. Counterclaimants have failed
5 to plead "factual content that allows the court to draw the reasonable inference" that
6 Counterdefendants' actions have caused R & G or GoDaddy.com not to perform according
7 to the terms of their contract. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing
8 *Twombly*, 550 U.S. at 556); *see also* RESTATEMENT (SECOND) OF TORTS § 766 ("One who
9 intentionally and improperly interferes with the performance of a contract . . . between
10 another and a third person by inducing or otherwise causing the third person not to perform
11 the contract, is subject to liability to the other for the pecuniary loss resulting to the other
12 from the failure of the third person to perform the contract."). Accordingly, the count is
13 dismissed with leave to amend.

14         **Count 4: Misappropriation of Trade Secrets**

15         Counterdefendants seek to dismiss the misappropriation of trade secrets claim
16 primarily for failure to allege sufficient facts to establish that information and items identified
17 in the counterclaim constitute trade secrets. The counterclaim asserts that the electronic mail
18 files, distributor information, customer information and business information on its servers,
19 transferred by Mr. Rios to Cosmetic Alchemy, are trade secrets.

20         Under Arizona law, a "trade secret" is "information, including a formula, pattern,
21 compilation, program, device, method, technique or process" that "[d]erives independent
22 economic value . . . from not being generally known to" or readily ascertainable, and whose
23 owner has made reasonable efforts to maintain its secrecy. A.R.S. § 44-401(4) (2010). "[A]
24 trade secret is not simply information as to single or ephemeral business events. Rather, a
25 trade secret may consist of a compilation of information that is continuously used or has the
26 potential to be used in one's business and that gives one an opportunity to obtain an
27 advantage over competitors who do not know of or use it." *Enter. Leasing Co. of Phx. v.*
28 *Ehmke*, 197 Ariz. 144, 148, 3 P.3d 1064, 1068 (Ct. App. 1999) (internal citations omitted).

Assuming that the information transferred did contain customer lists, for example, such information may qualify under Arizona law as trade secrets. *See Inter-Tel (Del.), Inc. v. Fulton Commc'ns Tel. Co., Inc.*, 2007 WL 1725349, at *6 (D. Ariz. June 12, 2007) (stating that under Arizona law, "'[a] list of customers, if their trade and patronage have been secured by years of business effort and advertising and the expenditure of time and money' has been held to 'constitute[] an important part of a business' that merits protection as a trade secret" (quoting *Prudential Ins. Co. v. Pochiro*, 153 Ariz. 368, 371, 736 P.2d 1180, 1183 (Ct. App. 1987))); *Wright v. Palmer*, 11 Ariz. App. 292, 295, 464 P.2d 363, 366 (Ct. App. 1970) (quoting RESTATEMENT OF TORTS § 757 (1939), which states that a trade secret may consist of "a list of specialized customers"). However, Counterclaimants have failed to plead any facts that would allow the Court to infer that R & G made reasonable efforts to maintain the secrecy of the information ultimately transferred. *See Ehmke*, 197 Ariz. at 150, 3 P.3d at 1070 (noting that "the most important factor in gaining trade-secret protection is demonstrating that the owner has taken such precautions as are reasonable under the circumstances to preserve the secrecy of the information"). Accordingly, the Court will grant the motion to dismiss as to this issue, with leave to amend.

**Count 5: False Advertising**

To state a claim for false advertising under the Lanham Act, a plaintiff must allege (1) a false statement of fact was made by a defendant in a commercial advertisement about its own or another's product, (2) the statement actually deceived or had the tendency to deceive a substantial segment of its audience, (3) the deception was material, in that it was likely to influence purchasing decisions, (4) the defendant caused the statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result of the statement, either by direct loss of sales or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing 15 U.S.C. § 1125(a)); *see also Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F.Supp.2d 1118, 1124 (D. Ariz. 2008). Counterdefendants challenge whether sufficient facts have been pled with regard to the first three elements of this claim.

1 With regard to the products at issue, the counterclaim alleges that R & G requested a "powerful eyelash and eye-brow-lengthening product without parabens" and the manufacturer "informed R & G that it could provide such a product." Counterclaimants allege that Counterdefendants have made false statements about those products, including that they are inferior and do not contain some necessary active ingredient, to R & G's customers and distributors. (Doc. 9). Accepting all allegations of material fact as true and construing them in light most favorable to Counterclaimants, the counterclaim meets the pleading standard for the first element. *Smith*, 84 F.3d 1213, 1217 (9th Cir. 1996).

Counterdefendants contend that even if Counterclaimants can demonstrate that the statements were made about R & G's products, such statements are "merely non-actionable puffery." (Doc. 25). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, . . . 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *Southland*, 575 F.Supp.2d at 1145 (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). A statement regarding the inferiority of a product is likely to be too "vague and generalized" to be actionable. *See nSight, Inc. v. PeopleSoft, Inc.*, 2005 WL 1287553, at *1 (N.D. Cal. June 01, 2005) (noting that defendant's statements that plaintiff's implementation services were inferior are puffery). However, a "'specific and measurable'" claim that a product does not contain a necessary active ingredient could have deceived customers and distributors interested in R & G's product, and therefore would be sufficient for pleading purposes. *Autodesk, Inc. v. Dassault Systèmes Solidworks Corp.*, 685 F.Supp.2d 1001, 1018 (N.D. Cal. 2009) (quoting *Southland*, 108 F.3d at 1145). Nevertheless, Counterclaimants have failed to adequately state a claim. Nowhere does the counterclaim actually allege facts relevant to elements two or three, that the statement actually deceived or had the tendency to deceive a substantial segment of its audience or that the deception was material, in that it was likely to influence purchasing decisions. Accordingly, this claim is dismissed, with leave to amend.

///

**Count 8: Cybersquatting**

Counterdefendants seek to dismiss the cybersquatting claim for failure to allege sufficient facts to establish Counterdefendants had a bad faith intent to profit from the DABALASH mark. (Doc. 25). The Ninth Circuit has explained that cybersquatting

> occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder.

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)). To state a claim of cybersquatting, the counterclaim must allege that a person "has a bad faith intent to profit from [a protected] mark" and "registers, traffics in, or uses a domain name that" "is identical or confusingly similar to or dilutive of that mark." 15 U.S.C. § 1125(d)(1)(A).

Counterclaimants allege that Counterdefendants "had a bad-faith intent to profit from the transfer of the dabalash.com domain name and associated e-mail address." (Doc. 9). The statute provides a list of factors that a court may consider in determining whether bad faith exists. Among the factors that support a finding of bad faith are whether the person intends to "divert consumers from the mark owner's location to a site accessible under the domain that could harm the goodwill represented by the mark . . . by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; offers to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain; provides misleading contact information when registering the domain name; or acquires multiple domain names which may be duplicative of the marks of others. 15 U.S.C. § 1125(d)(1)(B)(i); *see also Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809–10 (6th Cir. 2004) (explaining that the first four factors "are those that militate against a finding of bad faith by providing some reasonable basis for why a defendant might have registered the domain name of another mark holder", while the remaining factors "are indicative of the presence of bad faith").   Counterclaimants have alleged sufficient facts with regard to Mr. Rios' actions to state a claim of cybersquatting. The counterclaim alleges that

1  Mr. Rios offered to transfer the dabalash.com domain name to Dr. Wasserman, a third party,
2  for financial gain. Such actions may demonstrate a bad faith intent to profit from a protected
3  mark, and therefore, Counterclaimants have pled enough facts to state a claim to relief that
4  is plausible on its face.

5        Counterclaimants appear to argue that the other Counterdefendants profited from the
6  purchase of the domain name because it enabled them to take down the website, thereby
7  preventing R & G from conducting business and selling its products online. These facts fit
8  within the scope of the statute. *Cf. Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d
9  327, 333 (4th Cir. 1993) (noting that the purpose of the Lanham Act is to "'provide[] national
10 protection of trademarks in order to secure to the owner of the mark the goodwill of his
11 business and to protect the ability of consumers to distinguish among competing producers'"
12 (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985))). It is
13 plausible that Counterdefendants believed they would benefit from the purchase of the
14 dabalash.com domain name in that R & G's customers would purchase products made by
15 Cosmetic Alchemy, R & G's competitor, when they could not locate the dabalash.com
16 website. Counterclaimants have pled enough facts for the Court to reasonably infer that
17 Counterdefendants had a bad faith intent to profit from the dabalash.com domain name by
18 diverting R & G's customers and distributors from the dabalash.com website. Accordingly,
19 Counterdefendants' motion to dismiss is denied with respect to this claim.

20                         **Count 9: Defamation**

21       The counterclaim alleges that Counterdefendants made defamatory statements to
22 DABALASH customers and distributors, specifically that R & G copied Cosmetic
23 Alchemy's product and that the product did not contain the necessary active ingredient to
24 lengthen eyelashes. (Doc. 9). Such statements, they claim, harmed Counterclaimants'
25 reputation. Counterdefendants argue that the counterclaim fails to include any alleged
26 statements referring to Mr. Torres or Ms. Dabdoub, as individuals, or allege that the
27 statements about R & G could reasonably be understood as referring to them as individuals.
28 (Doc. 25). Thus, Counterclaimants have not stated a claim with regard to either Mr. Torres

or Ms. Dabdoub. With regard to R & G, Counterdefendants contend that the counterclaim fails to state a claim because it does not actually allege that the statements are false and defamatory.

Stating a claim for defamation "requires a false and defamatory statement concerning the plaintiff, an unprivileged publication of the statement to a third party, fault on the part of the publisher, and either presumed or actual damages." *Best Western Int'l v. Furber*, 2008 WL 4182827, at *4 (D. Ariz. Sept. 05, 2008) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)). Counterclaimants clearly note that the alleged statements "all tended to harm the reputation of the Counterclaimants", and therefore, are defamatory. Counterdefendants acknowledge that the counterclaim states that the allegation that DABALASH does not contain the necessary active ingredient is false. Moreover, the counterclaim does allege that R & G worked with C Coast Labs to develop a formula for the company's own eyelash enhancing product. Accepting all allegations of material fact as true and construing them in light most favorable to Counterclaimants, the counterclaim presents sufficient facts to allow the Court to infer that the statements are false and defamatory. *Smith*, 84 F.3d 1213, 1217 (9th Cir. 1996). Counterdefendants do not challenge the claim as it pertains to R & G on other grounds, and therefore, that claim will not be dismissed.

With regard to the defamation claim as asserted by Mr. Torres and Ms. Dabdoub, Counterdefendants argue that there are insufficient facts alleged as to any of the elements of the claim. The Court has already concluded that the Counterclaimants have met their burden as to the issue of alleging a false and defamatory statement. In addition, they allege that Counterdefendants "acted knowingly" in making the false statements to customers and distributors, thus satisfying the publication requirement for purposes of this motion. *See* RESTATEMENT (SECOND) OF TORTS § 577, cmt. a ("Any act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication.").[1] Thus, the

---

[1] "Arizona views the Restatement as authority for resolving questions concerning rules in defamation cases." *Burns v. Davis*, 196 Ariz. 155, 162, 993 P.2d 1119, 1126 (Ct. App.

1 remaining issue is whether the statements may be said to concern Mr. Torres and Ms.
2 Dabdoub, as individuals.

3 The counterclaim must "raise a right to relief above the speculative level."*Twombly*,
4 550 U.S. at 555. Alleging that Counterdefendants have made "numerous statements," without
5 more, is not enough to state a claim. Under Arizona law, "[t]o be actionable as a matter of
6 law, defamatory statements must . . . reasonably relate to specific individuals. While the
7 individual need not be named, the burden rests on the plaintiff to show that the publication
8 was 'of and concerning' him." *Hansen v. Stoll*, 130 Ariz. 454, 458, 636 P.2d 1236, 1249 (Ct.
9 App. 1981); *see also* RESTATEMENT (SECOND) OF TORTS § 564 cmt. b ("It is not necessary
10 that the plaintiff be designated by name; it is enough that there is such a description of or
11 reference to him that those who hear or read reasonably understand the plaintiff to be the
12 person intended."). The "recipient of the defamatory communication [must] understand [the
13 communication] as intended to refer to the plaintiff." RESTATEMENT (SECOND) OF TORTS §
14 564 cmt. a. The two specific statements included in the counterclaim do not mention Mr.
15 Torres or Ms. Dabdoub. It is unlikely that R & G's customers or distributors would consider
16 statements regarding the company's product, i.e., that it does not contain the necessary active
17 ingredient, as specifically "concerning" Mr. Torres or Ms. Dabdoub. However, a statement
18 that R & G as a company copied Cosmetic Alchemy's eyelash enhancer formula could be
19 said to "concern" Mr. Torres and Ms. Dabdoub given their positions as the founders of R &
20 G. Accordingly, their defamation claim survives this motion to dismiss.

## CONCLUSION

22 Counterdefendants' Motion to Dismiss is denied with respect to Counts 1, 8, and 9.
23 The counterclaim fails to state a claim against Counterdefendants with regard to the other
24 counts. At the same time, the Court "should freely give leave [to amend] when justice so
25 requires." FED. R. CIV. P. 15(a)(2). The Ninth Circuit has characterized this as a standard of
26 "extreme liberality." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (internal

---

28 1999) (citing *Sanchez v. Coxon*, 175 Ariz. 93, 95, 854 P.2d 126, 128 (1993)).

- 13 -

1  quotation marks omitted). Given that Counterclaimants may be able to allege sufficient facts
2  with regard to Counts 2, 4, and 5, dismissal is with leave to amend.
3      **IT IS HEREBY ORDERED** that Counterdefendants' Motion to Strike (Doc. 24) is
4  **GRANTED.**
5      **IT IS FURTHER ORDERED** that Counterdefendants' Motion to Dismiss (Doc. 25)
6  is **GRANTED IN PART AND DENIED IN PART**.
7      **IT IS FURTHER ORDERED** that Counterclaimants may file an Amended
8  Counterclaim **within 30 days** of the date of this Order.
9      DATED this 17th day of November, 2010.

*signature: H. Murray Snow*

G. Murray Snow
United States District Judge

- 14 -